IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| GINA LUREA HILL,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER, SSA,<br><br>Defendant. | § <br>§ <br>§ CIVIL ACTION NO. 4:16-CV-00025-CAN<br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ <br>§ |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying her claim for supplemental security income benefits [Dkt. 1]. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **REMANDED**.

### BACKGROUND

**I.  PROCEDURAL HISTORY OF THE CASE**

On October 24, 2012, Gina Lurea Hill ("Plaintiff") filed her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §1382c [TR at 145-50]. In her application, Plaintiff alleged an onset of disability date of June 28, 2005. *Id.* Plaintiff's application was initially denied by notice on January 16, 2013, and again upon reconsideration on March 26, 2013, after which Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 100-03, 110-12, 114-17. The ALJ conducted a hearing on May 23, 2014 ("Hearing"), and heard testimony from Plaintiff, Medical Expert Dr. Ken D. Cole

("Dr. Cole), Medical Expert Dr. Subramaniam Krishnamurthi ("Dr. Krishnamurthi") and Vocational Expert Deidra Parker ("Ms. Parker" or "VE"). *Id*. at 61-96. Plaintiff was represented by counsel at Hearing. *Id*. At Hearing, Plaintiff amended her alleged onset date to October 24, 2012. *Id* at 75. On July 23, 2014, the ALJ issued his decision denying benefits, and found Plaintiff not disabled at step five of the prescribed sequential evaluation process (discussed *infra*). *Id*. at 18-33. Plaintiff requested that the Appeals Council review the ALJ's decision, and on November 13, 2015, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner. *Id*. at 1-6.

On January 6, 2016, Plaintiff filed her Complaint with this Court [Dkt. 1]. On April 4, 2016, the Administrative Record was received from the Social Security Administration ("SSA") [Dkt. 10]. On April 6, 2016, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 12]. Plaintiff filed her Brief on April 29, 2016 [Dkt. 14]. On July 28, 2016, the Commissioner filed her Brief in Support of the Commissioner's Decision [Dkt. 18]. Plaintiff filed a Reply on August 5, 2016 [Dkt. 19].

## II. STATEMENT OF RELEVANT FACTS

### A. *Age, Education, and Work Experience*

Plaintiff was born on January 19, 1970, making her forty-four years of age at the time of Hearing (and classified at all relevant times as a "younger person") [TR at 64]. *See* 20 C.F.R. 416.963(c). Plaintiff asserts that her onset date of disability is October 24, 2012 [TR at 75]. Plaintiff completed the sixth grade and achieved her GED. *Id*. at 64. Plaintiff has no past relevant work experience. *Id*. at 65, 91.

B.   **Relevant Medical Record Evidence**

1. *Mental Health (Psychiatric) Treatment*

Plaintiff began mental health treatment at MHMR Services of Texoma ("MHMR") on or about February 16, 2012. [TR at 300]. Plaintiff reported a history of depression, anxiety, childhood physical and sexual abuse, as well as polysubstance use. Plaintiff was diagnosed with major depressive disorder, posttraumatic stress disorder ("PTSD") and polysubstance abuse in remission. *Id*. at 266-67, 305-06. In June 2012, Plaintiff advised her caseworker she was experiencing social withdrawal, difficulty concentrating, and upon examination, she was found to have a depressed, anxious mood and affect. *Id*. at 294-95. Plaintiff's symptoms in July 2012 continued to reflect a depressed mood, energy loss and worry for which Plaintiff was prescribed medication. *Id*. at 287, 290, 293. Plaintiff was seen again in both August and October for follow-up, where notwithstanding medication, she continued to present with a depressed, anxious mood and affect. *Id*. at 259-60, 281-82, 286. Plaintiff's treatment at MHMR continued in 2013, with Plaintiff reporting ongoing anxiety and depression with decreased activities of daily living, including inability to maintain personal hygiene. *Id*. at 331-32, 337. In March 2013, Plaintiff was noted to have depressive symptoms, and examination was positive for an anxious mood and affect with concentration problems. *Id*. at 386-88. Plaintiff's medications were increased. *Id*. at 390. Plaintiff returned in April and/or May 2013 reporting hallucinations and a lack of sleep; a mental status examination was positive for delusional associations and a depressed, anxious affect. *Id*. at 397. A further adjustment in Plaintiff's medication was made resulting in a reported increased difficulty concentrating but better overall mood in June 2013. *Id*. at 403-05. Examination continued to reveal depressed, axious mood and affect with word blocking and concentration problems. *Id*. Plaintiff again reported feeling better overall in September 2013, but

by January 2014 (and continuing through April 2014), Plaintiff reported worsening depression and examination reflected a continued depressed mood and affect with concentration deficits. *Id*. at 414-16, 494-96, 505-07.

### 2. *State Agency – Drs. Anderson, Thompson, Scales*

On January 3, 2013, State agency psychologist Dr. Ronald Anderson ("Dr. Anderson") completed a clinical interview and mental status examination of Plaintiff. *Id*. at 308-13. Dr. Anderson found Plaintiff had a depressed mood and flat affect with poor remote memory, and struggled to provide specific background or historical data. *Id*. at 311. Dr. Anderson diagnosed Plaintiff with major depressive disorder, anxiety disorder, and polysubstance dependence in remission. *Id*. at 312. In May 2014, Dr. Anderson also completed a medical source statement related to Plaintiff, indicating that she had marked limitations in her ability to understand, remember, and carry out complex instructions or make judgments on complex work related decisions. Dr. Anderson further reported limitations in responding to changes in routine work setting and interacting appropriately with supervisors, coworkers and the public. *Id*. at 522-23.

State agency consultants, Dr. Susan Thompson and Dr. Mischca Scales, also reviewed Plaintiff's records and provided statements regarding her mental impairments. Dr. Thompson opined Plaintiff's anxiety disorder and affective disorder constituted sever impairments and resulted in moderate difficulties in maintaining concentration, persistence, or pace. *Id*. at 320-21. Dr. Scales agreed that Plaintiff was moderately limited in maintaining attention and concentration and in completing a normal workday and workweek without interruptions from psychologically based symptoms. *Id*. at 366-69.

### 3. Treating Source – Dr. Parsons

The record contains medical opinions concerning Plaintiff's mental health from only one treating source, psychiatrist, Dr. Lauren Parsons. On April 28, 2014, Dr. Parsons, along with nurse practitioner Nancy Thompson, completed a medical source statement entitled "Medical Assessment of Ability to do Work-Related Activities (Mental)" related to Plaintiff. *Id*. at 512-16. This source statement is Exhibit 16F in the Administrative Record and states on its face that it applies to the period from October 24, 2012 to April 28, 2012. *Id*. The source statement indicates that Plaintiff has a substantial loss of ability to perform certain named activities in regular, competitive employment and, at best, could do such activities only in a sheltered work setting where special considerations and attention are provided. The activities identified as substantial loss of ability include: (1) the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, (2) maintain concentration for an extended period, (3) maintain attention/stay on task for an extended period, (4) perform at a consistent pace without an unreasonable number and length of rest periods, (5) ability to accept instructions and respond appropriately to criticism from supervisors, (6) ability to respond appropriately to changes in a routine work setting, (7) ability to cope with normal work stresses without exacerbating pathologically based symptoms, and (8) ability to finish a normal work week without interruption from psychologically based symptoms. *Id*. Dr. Parsons diagnosed Plaintiff with "296.89 Bipolar II D/O, 309.81 PTSD, 304.80 PSD in remission." *Id*. at 515.

### C. Hearing Testimony

#### 1. Plaintiff's Testimony

At Hearing, Plaintiff testified that she has not been employed since she was fifteen years old [TR at 65]. She explained that she had not applied for work, as a result of mental health

problems, including PTSD, major depression and anxiety, stemming from childhood physical and sexual abuse and also past drug use. *Id.* at 13-14, 65-66. Plaintiff testified she began psychiatric treatment at MHMR in approximately 2012, explaining she had not received treatment prior to that date because it takes a long time to "get in with MHMR." *Id.* at 68. Plaintiff also stated that her depression causes her to have trouble doing ordinary things, and that she has twice-attempted suicide. *Id.* at 75-77. As for her physical health, Plaintiff has Hepatitis C, anemia, and two smaller hernias. *Id.* at 69. She has no problems walking or sitting in a chair, can stand for at least 30 minutes at a time, and lift at least eight pounds. *Id.* at 70-72.

### 2. *Dr. Cole's Testimony*

Dr. Ken D. Cole, psychologist, testified as a nonexamining medical expert at the Hearing [TR at 80-80-88]. Notably, Dr. Cole reviewed each of Plaintiff's medical records including those of Dr. Parson (specifically Exhibit 16F). *Id.* Dr. Cole testified that Plaintiff had major depressive disorder without psychosis, PTSD and polystress disease. *Id.* at 81. The ALJ asked Dr. Cole to describe the impact of these conditions on her ability to do regular work. Dr. Cole responded:

> [w]ell, there's a medical source statement at 16F, which indicates that the problem is significant and she would have difficulty doing even the everyday tasks. She would have problems with concentration and so forth, all of that. That was completed in April of 2014. . . [s]o that indicates she would have significant problems due to major depression and continuing depression. . . [s]o, taking all that into effect, specifically 16F, which shows that that's a sever cycle, I really don't find that it's really that severe if we take that as the primary evaluation that it's a severe problem. Severe to the point where it would have a significant effect on her being able to employ.

*Id.* at 81-83. In response to Dr. Cole's answer, Plaintiff's counsel cross examined on the issues of Plaintiff's impairments and ability to sustain work activity. Dr. Cole clarified that he believed a severe impairment existed, and that with Dr. Parson's assessment (if that statement was relied

upon) that Plaintiff would lack the ability to sustain work activity. Id. at 87. Dr. Cole further conceded that Dr. Parsons, if she was a treating physician, would have a better basis to make an assessment of Plaintiff than himself. *Id*. at 88.

### 3. *Dr. Krishnamurthi's Testimony*

Dr. Subramaniam Krishnamurthi, certified in internal medicine and cardiology, also testified as a vocational expert at the Hearing [TR at 89-91]. Dr. Krishnamurthi diagnosed Plaintiff with the severe impairments of hepatitis C and anemia. He further testified that these conditions would limit Plaintiff to frequently lifting 10 pounds, occasionally 20 pounds, sitting to six hours of an eight hour period, standing and walking together for two hours of an eight hour period, and also that Plaintiff could frequently use her hands, and was limited occasionally to climbing ladders, scaffolds or stairs, stooping, crawling, crouching or kneeling. *Id*.

### 4. *Ms. Parker's Testimony*

Diedra Parker testified as a vocational expert at the Hearing [TR at 91-94]. The ALJ asked the VE to describe Plaintiff's work history, and the VE responded that Plaintiff had no past relevant work experience. *Id.* at 91. The ALJ then asked Ms. Parker:

> Let me give you a hypothetical case. A woman of the same age, same education and work background history. I'm going to put in the analysis of both of our medical experts. You heard Dr. Cole's testimony in regard to any mental problems with the claimant. It was his conclusion that, he didn't find any [psychological] limitations as far as functional ability to work. Dr. Krishnamurthi testified in regard to the objective physical medical evidence in the file, that such a person would be able to lift 10 pounds frequently, 20 pounds occasionally, sit six hours, but only could stand and walk two hours of eight. Hand use frequently and postural occasionally. Would there be any work in the regional or national economy that such a hypothetical person could perform?

*Id*. at 91-92. Ms. Parker testified that there are other jobs that exist in the national economy that such a hypothetical individual could perform including: order clerk, call-out operator and sorter. *Id*. at 92. Plaintiff's counsel upon cross, asked Ms. Parker, if the medical assessment performed

by Dr. Parson's (Exhibit 16F) was incorporated into the RFC, whether Plaintiff would be able to perform the jobs identified. *Id*. at 93-94. Ms. Parker conceded such jobs would be unavailable if Plaintiff were limited in the manner described in Exhibit 16F. *Id*. at 94.

## II. FINDINGS OF THE ALJ

### A. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

## B. ALJ's Disability Determination

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 24, 2012, the application date [TR at 23]. At step two, the ALJ determined that Plaintiff had the following severe impairments: hepatitis C and chronic anemia. *Id.* At step three, the ALJ found that these impairments, singly or in combination, did not satisfy the requirements for a presumptive finding of disability under the Act. *Id.* At step four, the ALJ found Plaintiff had the residual functional capacity to perform a "wide range of sedentary work",[1] with certain additional limitations. Specifically, the ALJ found:

> [Plaintiff] could lift 20 pounds occasionally and 10 pounds frequently. She could sit 6 of 8 hours and stand/walk 2 of 8 hours. She could use her hands frequently. She should not climb ladders or scaffolds. She could occasionally bend, stoop, and kneel. Other posturals would be occasional.

*Id.* at 26. Continuing the step four analysis, the ALJ then determined that Plaintiff has no past relevant work. *Id.* at 27. At step-five, based on Plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ found there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as order clerk and call out operator. *Id.* at 28. Thus, the ALJ concluded Plaintiff was not disabled from October 24, 2012 to July 23, 2014. *Id.* at 29-30.

---

[1] Each of the job classifications in the national economy is broken down into an exertion level: Sedentary, Light, Medium, Heavy, and Very Heavy. 20 C.F.R. § 404.1567. Sedentary work is defined as follows:

> (a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

# STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985). To reiterate, when determining the propriety of a decision of "not disabled," the court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995) (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991)).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

# ANALYSIS

Plaintiff contends that the ALJ erred by not considering the 20 C.F.R. § 416.927(c) factors and by applying incorrect legal standards to the opinions of her treating and nontreating physicians.

### *1.      Requirements for Giving Weight to Treating Physician*

The treating physician rule provides that the opinion of a claimant's treating physician is entitled to great weight. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala,* 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995). Indeed, a treating physician's opinion regarding the severity and nature of a plaintiff's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 175-76 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).[2] But the ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion" so long as good cause is shown. *Newton*, 209 F.3d at 456. As stated clearly in *Newton*:

> Even though the opinion and diagnosis of a treating physician should be afforded considerable weight in determining disability, the ALJ has sole responsibility for determining a claimant's disability status. [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

---

[2] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and the Court's reference to subsection (d)(2) refers to the factors now present at subsection (c)(2) of 20 C.F.R. § 404.1527. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006), *with* 20 C.F.R. § 404.1527 (Aug. 24, 2012).

*Newton*, 209 F.3d at 455-56 (internal citations and quotation marks omitted); *see, e.g., Greenspan*, 38 F.3d at 237.

### 2. Factors to be Considered Before Declining to Give Treating Physicians' Opinions Controlling Weight

SSA regulations provide that the SSA "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *See* 20 C.F.R. § 404.1527(c)(2); *accord* 20 C.F.R. § 416.927(c)(2) (mental impairments). Section 416.927(c)(2) requires the ALJ to consider specific factors to assess the weight to be given to the opinion of a treating physician when the ALJ determines that it is not entitled to "controlling weight." *Id*. Specifically, the ALJ must consider: (1) examining relationship; (2) treatment relationship; (3) supportability of the medical opinion; (4) consistency; (5) specialization of the physician; and (6) other factors. *See* § 416.927(c) (listing factors to consider). The ALJ must consider all six of these factors if "controlling weight" is not given to a treating physician's medical opinions. *Id*. ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion); *Newton*, 209 F.3d at 456 (stating the Fifth Circuit requires consideration of each of the 20 C.F.R. § 404.1527(c)(2) factors).

Notably, in *Newton*, the United States Court of Appeals for the Fifth Circuit concluded that "an ALJ is required to consider each of the § 404.1527[(c)] factors before declining to give any weight to the opinions of the claimant's treating specialist." 209 F.3d at 456. But, in subsequent decisions construing *Newton*, the Fifth Circuit has explained that "[t]he Newton court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F.App'x 461, 467 (5th Cir. 2009). Therefore, where there is competing first-hand medical evidence (i.e., competing opinions of treating or examining physicians), and the ALJ finds

as a factual matter that one doctor's opinion is more well-founded than another, the ALJ need not necessarily set forth an analysis of the Section 404.1527(c) factors when declining to give controlling weight to a treating physician. *See id*. at 466-67.

### 3. Weight Given to Drs. Parsons and Cole

The ALJ determined that Plaintiff has the residual functional capacity to perform a "wide range of sedentary work," and "could lift 20 pounds occasionally and 10 pounds frequently. She could sit 6 of 8 hours and stand/walk 2 of 8 hours. She could use her hands frequently. She should not climb ladders or scaffolds. She could occasionally bend, stoop, and kneel. Other postural would be occasional." [TR at 26]. The ALJ imposed no psychological limitations at all. Plaintiff contends that in making this determination the ALJ applied incorrect legal standards to the opinions of Plaintiff's treating physician, Dr. Parsons, and testifying medical consultant, Dr. Cole.

Dr. Parsons completed a "Medical Assessment of Ability to do Work-Related Activities (Mental)" related to Plaintiff. *Id*. at 512-16. Dr. Parsons diagnosed Plaintiff with "296.89 Bipolar II D/O, 309.81 PTSD, 304.80 PSD in remission." *Id*. at 515. According to Dr. Parson's assessment, Plaintiff was substantially limited in the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions, maintain concentration for an extended period, maintain attention/stay on task for an extended period, perform at a consistent pace without an unreasonable number and length of rest periods, ability to accept instructions and respond appropriately to criticism from supervisors, ability to respond appropriately to changes in a routine work setting, ability to cope with normal work stresses without exacerbating pathologically based symptoms, and ability to finish a normal work week without interruption from psychologically based symptoms. *Id*. at 515-16.

The ALJ referenced Dr. Parsons only twice in his Notice of Decision, recognizing that Dr. Parsons had completed a Medical Assessment stating that "she felt that the claimant had substantial loss of ability to understand and carry out detailed instructions, maintain concentration and stay on task" and then again to state that the ALJ believed "[t]he opinions expressed by Dr. Parsons and Dr. Anderson [were] not consistent with the record showing that the claimant is not as severely limited as they assert." *Id*. at 26-27. The ALJ did not state the weight accorded to Dr. Parson's opinion, nor was any further explanation given for the ALJ's wholesale rejection of Dr. Parson's opinions related to Plaintiff's mental impairments. Conversely, the ALJ accorded "substantial weight" to the testimony of nonexamining physician Dr. Cole to find Plaintiff's mental impairments non-severe. *Id*. at 25.

The facts of this case put it squarely within *Newton's* purview. The ALJ rejected the treating physician's opinion without assigning any weight to the opinion or conducting an examination of the relevant factors, instead giving great weight to the opinions of a non-examining source. And, while the ALJ's Notice includes a boiler-plate line stating the evidence was reviewed in accordance with 20 C.F.R. 416.927(c)(2), this statement on its own is not sufficient. *See Gerken v. Colvin*, No. 3:13-cv-1586-BN, 2014 WL 840039, at *6 (N.D. Tex. Mar. 4, 2014). There is no discussion of Dr. Parsons' length of treatment or frequency of examination; nor is there any discussion of the nature and extent of the treatment relationship. There is also no analysis of the support afforded to Dr. Parsons' opinion by the medical evidence of record, the consistency of the opinion with the record as a whole, or the specialization, if any of Dr. Parsons. There is similarly no analysis related to the ALJ's decision to accord substantial weight to Dr. Cole.

The Commissioner contends no analysis of the relevant factors was required because (1) first-hand competing evidence from another treating or examing physician exists, (2) the

factors do not apply to nontreating medical sources, or (3) Dr. Parsons has not been established as Plaintiff's treating physician [Dkt. 18 at 3-5].

As an initial matter, the Court rejects Commissioner's argument that Dr. Parsons has not been established as a treating physician. Discussion on this very point occurred at Hearing [TR at 83-84]. Counsel for Plaintiff repeatedly referred to Dr. Parsons as Plaintiff's treating physician, and neither the ALJ, nor Dr. Cole, disputed her status at Hearing. *Id*.

As to Commissioner's further argument that competing first-hand medical evidence exists, the Commissioner fails to identify which physician constitutes or presents such competing opinion. Moreover, the ALJ at no juncture made a finding that another treating or examining physician's opinion was more well-founded than Dr. Parsons. Absent such a factual finding, the ALJ cannot avoid analyzing the Section 404.1527(c) factors when declining to give controlling weight to a treating physician, such as Dr. Parsons. *Qualls v. Astrue*, 339 F.App'x 461, 467 (5th Cir. 2009); *Yearout v. Astrue*, No. 10-CV-430, 2010 WL 4860784, at *10 (N.D. Tex. Oct. 26, 2012) ("The ALJ here did not find as a factual matter, and based on competing first-hand evidence, that another doctor's opinion was more well-founded than [the treating physician's] opinion, or weight [the treating physician's] opinion on disability against the medical opinion of other physicians who had treated or examined Plaintiff and had specific medical bases for a contrary opinion. . . The ALJ was therefore required to perform the six-factor analysis . . . before rejecting [the treating physician's] opinion."). To the extent Commissioner intended to advance in its briefing that Dr. Anderson constitutes competing first-hand medical evidence, the ALJ made no mention that he rejected Dr. Parsons opinion because of and/or in favor Dr. Anderson's opinion. Rather, the ALJ purported to reject both Dr. Parsons and Dr. Anderson in favor of Dr. Coles, a testifying medical expert, who does not constitute first-hand medical evidence. Consequently, the ALJ could not

reject Dr. Parsons opinion without first conducting a detailed analysis of the Section 416.927(c) factors. *Shirsty v. Colvin*, No. 3:15-CV-1958, 2016 WL 3570508 (N.D. Tex. May 31, 2016) (ALJ required to consider each of factors prior to rejecting psychological limitations). Furthermore, the arguments in the Commissioners' briefing related to Dr. Anderson (and Dr. Thompson and Scales for that matter) also cannot rehabilitate the ALJ's determination because "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision." *Newton*, 209 F. 3d at 455.

Commissioner's final argument that the ALJ was under no obligation to analyze the 416.927(c) factors with respect to Dr. Cole is also seemingly misplaced. When an ALJ's decision is not fully favorable, the ALJ's "[N]otice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *1, 5.[3] The regulations make clear that opinions by other physicians must be similarly considered; and, "fundamentally, [t]he ALJ cannot reject a medical opinion without explanation.'" *Kneeland v. Berryhill*, -- F. 3d --, 2017 WL 927781, at *9 (5th Cir. Mar. 8, 2017). Indeed, the regulations plainly direct the ALJ to weigh all opinion evidence according to the factors, "regardless of its source." *Stafford v. Barnhart*, 402 F. Supp. 2d 717, 725 (E.D. Tex. 2005) (opinions of nontreating and nonexamining sources are evaluated under the same six factors applicable to treating sources); *Mills v. Colvin*, No. 4:14-CV-959, 2015 WL 12570839, at *13 (S.D. Tex. Oct. 19, 2015) ("If a treating physician's opinion is not given controlling weight, 'the ALJ must explain in the decision the weight given to the opinions of a nonexamining physician, as the ALJ must do for any opinions for treating sources, nontreating

---

[3] While the Social Security Administration's rulings are not binding on the Court, the Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions. *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001).

sources, and other nonexamining sources); *Cline v. Astrue*, 577 F. Supp. 2d 835, 844 (N.D. Tex. 2008) ("Every medical opinion is evaluated regardless of its source. Unless controlling weight is given to a treating source's opinion. . . the Commissioner considers six factors in deciding the weight given to each medical opinion"); *Stoll v. Colvin*, No. 3:14-CV-1239, 2015 WL 233312, at *5 (N.D. Tex. Jan. 16, 2015) ("Even in the case of a non-treating physician. . . the ALJ may not ignore medical opinions and must explain in his decision the weight that the ALJ gives to those opinions"). *See also* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5844, 2017 WL 168819 (Jan. 18. 2017) (For claims filed on or after March 27, 2017, we are revising our rules to state that our adjudicators will articulate how they consider medical opinions from all medical sources, regardless of whether or not the medical source is an AMS). The ALJ therefore committed error when he failed to consider the relevant factors in connection with both Drs. Cole and Parsons.

The ALJ's failure to consider the Section 416.927(c)(2) factors when rejecting Dr. Parsons opinion and adopting Dr. Cole's opinion was prejudicial error. *See Johnson v. Colvin*, No. 3:16-CV-69, 2017 WL 86139 (N.D. Tex. Jan. 10, 2017); *Gullette v. Colvin*, No. 3:14-CV-1497, 2015 WL 4660968 (N.D. Tex. Aug. 6, 2015); *Singleton v. Astrue*, No. 3:11-CV-2332, 2013 WL 460066 (N.D. Tex. Feb. 7, 2013). It is the ALJ's responsibility to weigh the evidence, and the Court is unable to say what the ALJ would have done had he properly weighed all relevant evidence of record. The opinions expressed by Dr. Parsons undoubtedly include significant limitations beyond those that the ALJ recognized in determining both Plaintiff's RFC and her severe impairments. Had the ALJ given proper consideration to Dr. Parsons (and Dr. Cole), the ALJ might have reached

a different decision as to disability. Therefore, the case should be remanded for reconsideration of Dr. Parsons and Dr. Cole's opinions under the relevant factors.[4]

## CONCLUSION

For the foregoing reasons, the Court finds that the decision to deny disability benefits to Plaintiff is **REMANDED** to the Commissioner for further deliberation in accordance with this decision.

**SIGNED** this 18th day of March, 2017.

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff advances a second argument in favor of remand that substantial evidence does not support the ALJ's finding that Plaintiff's mental impairments were non-severe. Because the Court has already determined that remand is appropriate, it does not reach Plaintiff's remaining issue on appeal. Plaintiff may pursue any arguments related to such claims of error in the administrative proceeedings on remand.